**MID–SOUTH PAVERS, INC.,**
**Plaintiff–Appellee,**

v.

**ARNCO CONSTRUCTION, INC., Jerry R. Thompson and Milo Odiorne, Partners, d/b/a Crockett Manor Apartments, Bank of Commerce of Trenton, Tennessee, National Partnership Investments Corp., and Real Estate Associates Limited VI, and Betty Odiorne, Executrix of the Estate of Milo Odiorne, Defendants–Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 12, 1989.

Rehearing Denied Feb. 15, 1989.

Permission to Appeal Denied by Supreme Court May 1, 1989.

James D. Senter, III and Senter & Senter, Humboldt, for plaintiff-appellee, Mid–South Pavers, Inc.

Jerry R. Thompson, Nashville, pro se.

Jere Fones, Memphis, for defendant-appellant, Nat. Partnership Investments Corp. and Real Estate Associates Limited, VI.

Barry W. Kuhn, Memphis, for defendant-appellant, Betty Odiorne, executrix of the Estate of Milo Odiorne.

HIGHERS, Judge.

Betty Odiorne, executrix of the estate of Milo Odiorne, defendant, appeals an order from the Chancery Court denying her Motion to Alter or Amend the Final Judgment and in the Alternative for a New Trial.

Milo Odiorne and Jerry R. Thompson formed a partnership and contracted with Arnco Construction (Arnco) for the construction of an apartment project. Arnco in turn contracted with the plaintiffs, Mid–South Pavers (Mid–South), to pave the site. After the paving work was completed, Mid–South filed suit against Arnco, Odiorne, Thompson, the partnership and others, seeking payment for the work. Arnco filed a cross-claim against Odiorne and Thompson.

While the action was still pending, Milo Odiorne died. His estate was opened in Shelby County Probate Court on October 31, 1986, and the date of first publication of notice to creditors of Milo Odiorne was on November 6, 1986.

In December of 1986, the trial court entered an order on motion of Mid–South to substitute Betty Odiorne, administratrix of Milo Odiorne's estate, as a party defendant "in the place and stead of Milo Odiorne." The order was entered by consent. Arnco cited T.R.Civ.P. 25.01 as authority for its motion to substitute Betty Odiorne. Arnco's motion was filed in May, 1987, and subsequently entered by the court. Neither Mid–South nor Arnco filed a copy of the substitution orders with the Probate Court of Shelby County in which Milo Odiorne's estate was being administered.

After a trial without a jury, on December 21, 1987, the trial court dismissed the complaint as to Arnco and granted judgment to Mid–South against Thompson and Milo Odiorne. Betty Odiorne then filed the Motion to Alter or Amend the Final Judgment and in the Alternative for a New Trial. The motion prayed for the judgment to be set aside as to Milo Odiorne and offered to show that the "suit abated on May 6, 1987 because no copy of the Order of Revivor in duplicate was filed ... as required by T.C.A. § 30–2–320; and ... therefore this Honorable Court lacked jurisdiction to hear this cause as to the defendant." This motion was overruled as "it appeared to the Court that such motion [was] not well taken."

Betty Odiorne has appealed asserting the same arguments as she made in support of her motion. Mid–South asserts that Betty Odiorne is estopped from asserting T.C.A. § 30–2–320 because of her knowledge of and participation in the defense of the matter, and that T.R.Civ.P. 25.01 takes precedence over T.C.A. § 30–2–320.

A brief semantic and historical review is helpful in understanding the law of abatement and revivor. This area of law is fraught with confusion from the "indiscriminate use of the terms 'action,' 'cause of action,' and 'right of action,'" 1 Am. Jur.2d, *Actions* § 1 (1962). An "action" historically was a judicial proceeding at law paralleling the "suit" in equity. Actions in both law and equity are today, under the Tennessee Rules of Civil Procedure, known as "civil actions." T.R.Civ.P. 2. The term "cause of action" is the set of facts which give rise to the judicial proceeding. 1 Am. Jur.2d, *Actions* § 3. The cause of action is born when those facts occur. The action occurs when a complaint based on those facts is filed with the court. T.R.Civ.P. 3.

Either the action or the cause of action may abate. Higgins, Tennessee Procedure in Law Cases, § 936, n. 16 (1937). According to the Oxford English Dictionary, the

word "abate" literally means "to beat down." In its application in law, the meaning has historically depended on the object of the abatement. If an action abated and the cause of action did not survive the death of a party, no new action could be brought by or against the heirs or representatives of the party. Higgins at § 937. The most obvious example of a cause of action not surviving the death of a party during pendency of an action is divorce. *See Owens v. Sims*, 43 Tenn. (3 Cold.) 544 (1866). At common law, all actions abated on the death of a party, and were considered destroyed, quashed and ended. Higgins at § 932. If the cause of action survived, a new action could be brought against the successors in interest, but the original action was dead. 1 Am.Jur.2d, *Abatement Survival and Revival* § 47 (1962); *see also Carver v. State*, 217 Tenn. 482, 398 S.W.2d 719 (1966). In equity, the action did not abate upon the death of a party unless the cause of action abated. If the cause of action survived, the action was merely suspended. *Witt v. Ellis*, 42 Tenn. (2 Cold.) 38, 41 (1865). The same action continued once a representative of the deceased was made a party. 1 C.J.S., *Abatement and Revival*, §§ 1, 2a (1985); *Harris v. Nashville Trust*, 128 Tenn. 573, 162 S.W. 584, 586–87 (1914).

Both processes, the filing of a new action at law and the substitution of a deceased party's representative in equity, were referred to as "revivor." *See generally* 1 C.J.S., *Abatement and Revival* § 114. If the cause of action survived the death of a party, the action could be revived. At common law all causes of action for personal injury abated on the death of the person injured. *See Benton v. Knoxville News–Sentinel Co.*, 174 Tenn. 658, 130 S.W.2d 105 (1939). The ancestors of Tennessee survival statutes first provided for the continued existence of causes of action for which actions had already been filed, and soon thereafter for causes of action even prior to filing of suit. North Carolina Public Acts 1785. Chap. 2, § 2; North Carolina Public Acts 1786, Chap. 14, § 1. Those North Carolina statutes became a part of Tennessee statutory law when the state was formed. *See* North Carolina Public Acts 1789, Chap 3; Tennessee Constitution, Art. 10, § 2. Modern Tennessee survival law is codified at T.C.A. § 20–5–101 *et seq.* (1980 & Supp.1988). Revivor was originally by bill of revivor, and later by writ of *scire facias*. 1 Am.Jr.2d, *Abatement, Survival and Revivor*, § 114 (1962). Currently, the law regarding revivor, although technically no longer referred to as "revivor," is governed primarily by the Tennessee Rules of Civil Procedure. T.R.Civ.P. 25.

Those rules were drafted by the Supreme Court of Tennessee under authority delegated to the court by the Tennessee General Assembly. Tennessee Public Acts 1965, Chap 227. In light of the adoption of the rules in 1971, the General Assembly endeavored specifically to repeal a number of statutes which were in conflict with the rules. *See e.g.* Tennessee Public Acts 1972, Chap. 565. Any conflicting statutes not specifically repealed were and are effectively nullified by T.C.A. § 16–3–406 (1980).

It is clear that not every provision of every statute which conflicted has been specifically repealed. Some conflict is merely a matter of archaic labels. For example, the rules replaced "pleas in abatement" with "motions for dismissal." *See* T.R.Civ.P. 7.03, 41.02. However, some statutes continue to refer to "pleas in abatement." *See e.g.* T.C.A. § 20–6–303 (1980 & Supp.1988).

▆▆▆ Statutes which conflict with the rules must be given effect to the extent possible. *See City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. App.1983). The ultimate objective in statutory construction is to determine legislative intent. *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn.App.1978). Conflicts between provisions of the Tennessee Rules of Civil Procedure and provisions of the Tennessee Code which cannot be harmoniously construed will be resolved in favor of the Tennessee Rules of Civil Procedure. T.C.A. § 16–3–406 (1980).

T.R.Civ.P. 25.01 provides that "[i]f a party dies and the claim is not thereby extin-

guished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or the successors or representatives of the deceased party and, together with notice of hearing shall be served on the parties as provided in Rule 5 ... for the service of process." Committee Commentary following T.R.Civ.P. 25 states that "[p]rior law, whether common law or statute ..., governing survival of actions after death of a party is not changed by this rule." It has been erroneously asserted that the preceding quotation is authority for the proposition that T.R.Civ.P. 25.01 does not change the rules of *revivor.* The commentary is regarding *survival.* Those causes of action which survived the death of a party before adoption of T.R.Civ.P. 25.01 survive the death of a party under T.R.Civ.P. 25.01; those which did not, do not. As the Committee Comment further notes, the law of *revivor* has been simplified in that prior law required as a first step either consent or *scire facias* and notice. T.R.Civ.P. 25.01 replaces prior law with motion and notice.

T.C.A. § 30–2–320 provides that "[a]ll actions pending against any person at the time of his death, which by law may survive against the personal representative, shall be considered demands legally filed against such estate at the time of the filing with the clerk of the court in which the estate is being administered of a copy in duplicate of the order or revivor.... Pending actions not so revived against the personal representative within six (6) months from the date of notice to creditors shall, at the expiration of that period, abate." T.C.A. § 30–2–320 (1984).

Neither the text of nor the Committee Comments to T.R.Civ.P. 25.01 refers directly to this statute, but since it has not been repealed, we must give it effect to the extent possible. *City of Caryville, supra.* Harmonious construction is not a difficult task because the only direct conflict between the statute and T.R.Civ.P. 25 is the statute's reference to an "order of revivor." That order in the case of death of a party and the method by which it was obtained have been replaced by a motion and order for substitution of parties under T.R.Civ.P. 25.

■ We hold that T.C.A. § 30–2–320 is good, valid, and binding law in this state. Any references in that statute, or in any other part of the code, to an "order of revivor" shall be construed as references to an order of substitution of parties under T.R.Civ.P. 25. Revivor of an action therefore requires first, entering an order of substitution of parties and second, filing a copy of that order with the clerk of the court in which the estate of the deceased party is being administered. *Windsor Hosiery Mills, Inc. v. Haren,* 222 Tenn. 479, 437 S.W.2d 248, 250 (1969).

■ To the extent that requirements of T.C.A. § 30–2–320 were jurisdictional prior to adoption of the T.R.Civ.P., they are jurisdictional now. "[S]tatutory enactment[s] ... [which are] denominated as a nonclaim or administrative statute for the orderly, expeditious, and exact settlement of estates of decedents ... are jurisdictional." *Alamo Development Corp. v. Thomas,* 186 Tenn. 631, 212 S.W.2d 606, 607 (1948). T.C.A. § 30–2–320 has been recognized as such a statute and as such has been held mandatory and jurisdictional. *Windsor Hosiery, supra* 437 S.W.2d at 251; *see generally* Tennessee Public Acts 1939, Chap. 175.

■ Applying the foregoing rules to the case at bar we find that the first publication of notice to creditors was on November 6, 1986. The six month period for filing of an order of substitution expired on May 6, 1987, without any such order being filed. Mid–South asserts that Betty Odiorne is estopped from asserting T.C.A. § 30–2–320 as a defense because of her knowledge of and participation in the trial. Personal jurisdiction may be waived; subject matter jurisdiction may not. *Davis v. Mitchell,* 27 Tenn.App. 182, 178 S.W.2d 889 (1944). Betty Odiorne could not waive the trial court's lack of jurisdiction which arose by operation of T.C.A. § 30–2–320.

The judgment of the trial court is reversed, and this case is dismissed as to

Betty Odiorne. Costs are taxed to the appellant.

CRAWFORD and FARMER, JJ., concur.