Albert W. WITTER and wife, Phyllis Witter, Plaintiffs–Appellants,

v.

Ulyses NESBIT, Defendant–Appellee.

Court of Appeals of Tennessee, Western Section.

Dec. 15, 1993.

Application for Permission to Appeal Denied by Supreme Court April 4, 1994.

Asa H. Hoke, Memphis, for appellants.

E. Patrick Lancaster, Larry M. Sargent, Memphis, for appellee Nationwide Mut. Ins. Co.

CRAWFORD, Judge.

Plaintiffs, Albert W. Witter, and wife, Phyllis Witter, filed this action against defendant, Ulyses Nesbit, an uninsured motorist, and pursuant to T.C.A. § 56–7–1206 (1989) also served process on the uninsured motorist carrier.

The complaint alleges that Mr. Witter, while driving his employer's vehicle, was involved in a collision with a vehicle driven by defendant and that he sustained serious and permanent personal injuries [1] as a direct and proximate result of defendant's negligence, both under the common law and by virtue of defendant's violation of various state statutes and city ordinances.

Although served with process, defendant Nesbit did not file an answer or other response to the complaint. Nationwide Mutual Insurance Company, the uninsured motorist carrier, filed an answer to the complaint which, among other things, specifically responded to the allegations of the plaintiff's complaint. The answer denied the allegations of negligence and violations of statutes and ordinances on the part of the defendant, denied that Mr. Witter was injured in the nature and to the extent as alleged in his complaint, and denied that any of his losses, injuries and damages were directly and proximately caused by the negligence of defendant. The answer also alleged that Witter was contributorily negligent based on common law negligence and violations of various state statutes and city ordinances.

Plaintiff moved for a default judgment against Nesbit, which the trial court granted

---

1. Mrs. Witter has a derivative action for loss of consortium, so we will omit further reference to her case.

without any opposition from Nationwide, although Nationwide, as indicated above, contested Nesbit's liability by joining issue on the complaint's allegations and asserting affirmative defenses. On March 20, 1991, the trial court entered an order granting the motion for default judgment;[2] the order provided: "[T]hat a writ of inquiry as to damages against Ulyses Nesbit shall be set at the time of the trial in this matter."

Subsequently, plaintiff filed a motion for summary judgment against Nationwide grounded in part on the default judgment against the uninsured motorist, which motion was denied by the trial court. After what appears to be extensive pretrial discovery proceedings, the case was tried before a jury for approximately ten days on the issues joined by plaintiff's complaint and Nationwide's answer.

The jury returned its verdict in response to special interrogatories, and the court entered judgment thereon, which we quote:

This cause came on to be heard upon the filing of the complaint, the filing of an answer by the uninsured motorist carrier, Nationwide Mutual Insurance Company, and upon a default judgment taken against the Defendant, Ulyses Nesbit; the trial beginning May 18, 1992, and continuing through June 4, 1992, before a jury of twelve, to wit: Kathie Boyd, Kevin A. Hardin, Juan D. Hogan, Leonard B. Hampton, Edward S. Chambers, Terral Layrock, William E. Hardwick, Michael D. Chaffin, James Wade, Jr., Lisa Chappel, Carol J. Vandoesburg; upon the testimony of the Plaintiffs, Albert W. Witter, and wife, Phyllis Witter, their witnesses and evidence; the defendant, Ulyses Nesbit failing to appear until the second week of trial when called by the Respondent, Nationwide Insurance Company, upon the testimony of the Defendant, Ulyses Nesbit; upon statements and argument of counsel for the Plaintiffs, Albert W. Witter and wife, Phyllis Witter; upon statements and arguments of counsel for the Respondent, Nationwide Insurance Company, their wit-

nesses and evidence; the charge of the Court; and upon the entire record.

The jury, having deliberated, returned its verdict on June 4, 1992, in which the jury found the liability issues in favor of the Respondent, Nationwide Insurance Company, and against the contentions of the Plaintiffs, Albert W. Witter, and wife, Phyllis Witter.

It further appeared to the Court that judgment should be entered on the jury's verdict.

IT IS, THEREFORE, BY THE COURT, ORDERED, ADJUDGED AND DECREED that this action be dismissed with prejudice as against the Respondent, Nationwide Insurance Company; and that there is no just reason for delay and judgment be, and is hereby directed to be entered accordingly.

The costs of this cause are adjudged against the Plaintiff, for which let execution issue.

■ Plaintiff has appealed and his first issue for review as rephrased by the Court is whether the trial court erred in conducting the trial on the issues joined by the complaint and Nationwide's answer when a default judgment had previously been entered against the defendant uninsured motorist.

Plaintiff asserts that he was forced to trial and that the court refused to entertain any motion concerning the default judgment or writ of inquiry, which resulted in conflicting and inconsistent judgments. Before commenting on plaintiff's assertions, we should first consider the procedure used in this case.

Mandatory uninsured motorist coverage is "for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." T.C.A. § 56–7–1201(a) (Supp.1993).

In *Glover v. Tennessee Farmers Mutual Insurance Co.*, 225 Tenn. 306, 468 S.W.2d 727

---

2. Although premised on the motion for default judgment, the order granted a "summary judgment," which is obviously a clerical error that should be corrected pursuant to Tenn.R.Civ.P. 60.01.

(1971), our Supreme Court discussed the above-quoted language of the statute:

> We deem the language quoted as equivalent to a requirement that the defendant insurer pay such sums as such uninsured motorist would be legally liable to pay to its insured up to the limits required by the statute.
>
> "Legal liability" means, with respect to insurance contracts, a liability which the courts of justice will enforce as between parties litigant. *Abbott v. Aetna Cas. & Surety Co.*, D.C. Maryland, 42 F.Supp. 793, 806 [ (1942);] *Glove & Republic Ins. Co. v. Independent Trucking Co.*, Okl., 387 P.2d 644, 646 [ (1963) ]. Substantially to the same effect see the ruling of the Supreme Court in *Arnold v. Walton*, 205 Ga. 606, 611, 54 S.E.2d 424 [ (1949) ]. It is fundamental that the legal liability of one person to another can be ascertained only in an action brought against such person by the other in a court of competent jurisdiction.

468 S.W.2d at 729–30.

A defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in the complaint, except for the amount of plaintiff's unliquidated damages. *Patterson v. Rockwell Intern.*, 665 S.W.2d 96 (Tenn.1984). Thus, upon entry of a proper default judgment, the subsequent proceedings should be confined to the establishment of the amount of damages.

The procedure for actions against uninsured motorists is set forth in T.C.A. § 56–7–1206 (1989), which provides, as pertinent to the issue before us:

> (a) Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice; provided further, that the evidence of service upon the insurance carrier shall not be made a part of the record.

According to T.C.A. § 56–7–1206, the uninsured motorist carrier has no obligation to defend the action on behalf of the uninsured motorist, but has the right to do so. If the carrier chooses not to defend, it is bound by the judgment against the uninsured motorist. *Harvey v. Birchfield*, 535 S.W.2d 334 (Tenn.1976); *Glover v. Tennessee Farmers Mut. Ins. Co.*, 225 Tenn. 306, 468 S.W.2d 727 (1971).

It seems clear to this Court that by allowing the uninsured motorist carrier to defend the tort action on behalf of the insured or in its own name, the legislature intended to prevent a situation in which the uninsured motorist carrier would be bound by a default judgment against an uninsured motorist who may have no interest in defending the case. In the case at bar, Nationwide, the uninsured motorist carrier, filed an answer, specifically joined issue on the allegations of the complaint and asserted affirmative defenses. To allow entry of a default judgment against the defendant uninsured motorist that could legally entitle plaintiff to recover damages for which the uninsured motorist carrier would be liable, and at the same time allow the uninsured motorist carrier to continue defending the action would produce an incongruous result. The uninsured motorist carrier has the right to defend the tort action, and the defense must necessarily be on behalf of the uninsured motorist. Although Tenn. R.Civ.P. 55.01 provides for the entry of a default judgment against a party who has failed to plead, this rule should not apply when pleadings are filed on behalf of a defendant pursuant to T.C.A. § 56–7–1206(a).

T.C.A. § 56–7–1206 provides the procedure by which uninsured motorist coverage protects an insured party and also establishes a safeguard for the insurer against the whim of the uninsured motorist. Admittedly, Tenn. R.Civ.P. 55.01 provides for entry of a default judgment in the event of failure of a defendant to plead; however, T.C.A. § 56–7–1206

allows a defense to the suit even if the defendant does not plead.

In *Lady v. Kregger,* 747 S.W.2d 342 (Tenn. App.1987), the Eastern Section of this Court dealt with the interpretation of Tenn.R.Civ.P. 3 in conjunction with claims against an uninsured motorist pursuant to the provisions of T.C.A. § 56-7-1206. The Court, speaking through Judge Goddard, said:

> T.C.A. § 1-3-103 provides:
>
> If provisions of different titles or chapters of the Code appear to contravene each other, the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject matter of that title or chapter.
>
> The Tennessee Rules of Civil Procedure are "laws" and are subject to being superseded in the same manner as statutes. *See Tennessee Department of Human Services v. Vaughn,* 595 S.W.2d 62 (Tenn. 1980). Thus, the specific provisions in T.C.A. § 56-7-1206(e) prevail over the conflicting general provisions in T.R.C.P. Rule 3.

747 S.W.2d at 345.

In the case at bar, the specific provision in T.C.A. § 56-7-1206(a) that allows the uninsured motorist carrier to contest the allegations of the complaint in the tort action prevails over the provision in Tenn.R.Civ.P. 55.01 that provides for the entry of a default judgment upon failure to plead by a party against whom a judgment is sought. Therefore, in the face of the pleadings filed, the trial court should not have granted the default judgment in the instant case. We note, however, that the plaintiff filed the motion for a default judgment and Nationwide did not contest granting of same.

Subsequent to the granting of the default judgment, plaintiff moved for summary judgment against Nationwide grounded in part on the entry of default judgment against the uninsured motorist. The trial court denied this motion, and from a review of the record before us, it appears that the default judgment was ignored in further trial proceedings.

Plaintiff argues that he was forced to go to trial and that the court refused to entertain any motions concerning the default judgment or writ of inquiry. In making these allegations, plaintiff includes no references to the record, and we find nothing in the record to indicate that there was any objection to proceeding to trial or any attempt to limit the scope of defendant's proof to damages only. To the contrary, the record indicates that plaintiff, under questioning from his counsel, testified fully and completely concerning the facts of the accident to establish the liability of the defendant uninsured motorist. In this same vein, the record does reflect that at the conclusion of plaintiff's case, defense counsel advised the court that he had two witnesses in the hall and that one of the witnesses was the defendant, Ulyses Nesbit. The following proceedings occurred:

> THE COURT: The defendant? You got any objection?
>
> MR. HOKE: Yes, I do, Your Honor.
>
> THE COURT: What?
>
> MR. HOKE: Basically he's a defendant in this case. There has already been a default judgment taken against him. He has not appeared at this trial as a defendant. Basically I've stated that before. I still have that objection.
>
> THE COURT: Well, I mean, his real client has a right to defend himself.
>
> MR. HOKE: And I think that under the circumstances his failure to appear, his failure to cooperate in the discovery in this case, or to defend himself in a default judgment being issued against him that he should be precluded from testifying at this point in time. I—
>
> THE COURT: Off the record. (Off-the-record discussion)
>
> THE COURT: I think I'm going to let him testify. . . .

The record does not include the jury voir dire, opening statements or closing arguments of counsel, so we are unable to ascertain how Nationwide's counsel was identified to the jury. The record does reflect, however, that the trial court instructed the jury specifically regarding the responsive pleadings of the defendant. As a result, it appears that both the parties and the trial court completely disregarded the default judgment.

From our review of the record, we cannot find that the erroneous entry of the default judgment had any effect on the trial of the case; moreover, plaintiff's counsel was well aware of Nationwide's answer contesting liability, but took no steps prior to trial to clarify any question concerning the trial procedure. The error in granting the default judgment was harmless; therefore, plaintiff's first issue is without merit.

■ Plaintiff's second issue is whether the trial court erred in denying plaintiff's motion to disqualify defense counsel.

Plaintiff asserts that defendant's counsel has a conflict of interest because the same counsel represented Nationwide in defense of Witter's workers compensation claim against his employer. Nationwide provided both workers compensation and automobile liability insurance coverage to Witter's employer. Plaintiff argues that because the workers compensation carrier has a right of subrogation for the compensation paid, the defense counsel should in effect be assisting plaintiff in recovery. This argument is without merit. Although the workers compensation carrier has a right of subrogation, in the instant case the workers compensation carrier and the uninsured motorist carrier are the same company, and the policy provides for a credit for amounts paid under the workers compensation statute. An order was duly entered in the trial court noting such a credit toward any future recovery. Moreover, plaintiff's counsel has failed to show that there is any conflict of interest on the part of defense counsel and has cited no authority in support of his position. This issue is without merit.

Plaintiff's next issue, as stated in his brief, is:

III. The jury's verdict was contrary to the weight of the evidence and the court as 13th juror erred by failing to grant a new trial as the jury was motivated by passion, prejudice or some other unknown bias and not the weight of the evidence or jury instruction.

■ In this case, only the plaintiff and the defendant testified concerning the facts of the accident. The Court of Appeals does not reweigh the evidence or reevaluate witnesses' credibility in an appeal from a jury verdict. *Grissom v. Metropolitan Gov't of Nashville,* 817 S.W.2d 679 (Tenn.App.1991). This Court on appeal is required to take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, allow all reasonable inferences to uphold the jury's verdict and set aside the jury verdict only when there is no material evidence to support it. T.R.A.P. 13(d). *Smith County v. Eatherly,* 820 S.W.2d 366 (Tenn.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1762, 118 L.Ed.2d 424 (1992); *Glover v. Oakwood Terrace Associated II,* 816 S.W.2d 43 (Tenn.App.1991).

■ Plaintiff's assertion that we should reweigh the evidence is without merit. On this issue, plaintiff also apparently argues that the trial judge should have set the jury verdict aside. When a party asserts in a motion for a new trial that the verdict is contrary to the weight of the evidence, it is the duty of the trial judge to weigh the evidence and determine whether it preponderates against the verdict, and if so, to grant a new trial. *Overton v. Davis,* 739 S.W.2d 2 (Tenn.App. 1987).

In *James E. Strates Shows, Inc. v. Jakobik,* 554 S.W.2d 613 (Tenn.1977), the Tennessee Supreme Court defined the duty of the trial judge as the thirteenth juror:

> In performing his duty as thirteenth juror, the trial judge is not bound to give any reasons for his action, anymore than the jury is bound to do so. But, in passing on a motion for a new trial, if it appears from reasons assigned or statements made, that the trial judge was not satisfied with the verdict, it is the duty of the appellate courts to grant a new trial. *Telephone and Telegraph Company v. Smithwick,* 112 Tenn. 463, 79 S.W. 803 (1903).

554 S.W.2d at 615.

We find nothing in the record before us to indicate that the trial judge did not perform his duties as the thirteenth juror, nor does the record indicate that the trial judge was not satisfied with the verdict. Therefore, it appears that the trial judge did properly perform his duty as the thirteenth juror. This issue is without merit.

Plaintiff's next issue for review is whether the trial court erred in allowing the introduction into evidence of prior medical records of plaintiff maintained by the Tennessee State Penitentiary Health Center.

Tennessee Rule of Evidence 803(6) provides:

> The following are not excluded by the hearsay rule:
>
> \* \* \* \* \* \*
>
> (6) **Record of Regularly Conducted Activity.**—A memorandum, report, record, or data compilation in any form of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes every kind of business, institution, association, profession, occupation, and calling, whether or not conducted for profit.

Primarily, defendant sought to introduce the records to impeach plaintiff's testimony that he had no prior back pain and arthritic problems. Plaintiff first argues that the custodian of the records who testified was unable to verify that the individuals who made the entries had the authority to make those entries.

"It is sufficient if the person laying the foundation for the record testifies that the regular business procedure is for a person with personal knowledge of the recorded event to provide information or make the entry." Neil P. Cohen et al., *Tennessee Law of Evidence,* § 803(6).3 (2d ed. 1990). The record reflects that there was a proper foundation for the introduction of this evidence. Admissibility of evidence rests within the sound discretion of the trial court, and the decision for admission will be reversed only on the showing of abuse of that discretion. *Inman v. Aluminum Co. of America,* 697 S.W.2d 350 (Tenn.App.1985). Plaintiff testified that he had no prior back problems and arthritic problems, and the evidence that could be considered contradictory was proper for the jury to consider. The trial court excluded the majority of the record and allowed only those records that indicated prior physical problems in contradiction to plaintiff's testimony. This issue is without merit.

The next issue for review is whether the trial court erred in refusing to allow exhibits to be passed to the jury during the trial or closing argument. Plaintiff makes a general statement concerning the trial court's refusal to allow exhibits to be passed to the jury and does not point out in his brief any place in the record where such alleged error occurred. The court is not under a duty to minutely search a voluminous record to verify numerous, unsupported allegations in the brief. *Schoen v. J.C. Bradford & Co.,* 642 S.W.2d 420 (Tenn.App.1982).

Plaintiff's next issue is whether the trial court erred in allowing the defendant driver to testify. We have difficulty understanding plaintiff's argument in this issue. It appears that plaintiff argues that he was not allowed to call Nesbit as an adverse witness because Nesbit did not appear while he was putting on his proof. The record does not indicate that Nesbit was subpoenaed and failed to honor a subpoena issued by the plaintiff. As we previously noted, Nationwide joined issue on the plaintiff's complaint, and the plaintiff apparently understood that, because he testified at length concerning how the accident occurred. Plaintiff also makes some reference to being "cut-off" during the rebuttal testimony. He states in his brief, "Other than a few brief questions the court was not in the mood to allow the plaintiff to develop testimony concerning the new elements introduced by Mr. Nesbit." The brief does not point out any place in the record where the trial court cut off plaintiff's rebuttal testimony. We find this issue to be without merit.

Plaintiff's seventh issue for review, as stated in his brief, is:

VII. The court erred in failing to grant a new trial based upon the unfair prejudice created by repeated blatantly improper questions and statements by the defense during the course of the trial designed to evoke bias, ill will and prejudice.

Plaintiff first asserts that the trial court erred in allowing into evidence the record of a psychological interview concerning the race of the boyfriend of plaintiff's mother. Plaintiff contends that this was done to inject racial animosity into the case. The trial court considered plaintiff's objection and it appears that the evidence was admitted because of the relevancy of the family and social history with regard to psychiatric problems. The trial court weighed the probative value of the evidence and found that it outweighed any potential prejudicial effect. We do not find an abuse of discretion in this regard.

Plaintiff next argues that defense counsel asked improper questions, such as, had the plaintiff "ever played Russian Roulette." Plaintiff's counsel objected to this question, the trial court sustained the objection and that apparently was the end of the matter. Plaintiff also asserts that defense counsel asked plaintiff if he had ever struck anyone, if he had been convicted of armed robbery, if he had "physically taken any punishment out on [his] wife or stepdaughter," and if he had a "fancy boat." Plaintiff's counsel made no objection concerning the first three of these alleged questions; therefore, any objection was waived. As to the last question concerning the "fancy boat," the record reveals that it was plaintiff's counsel who asked this question on redirect examination. This issue is without merit.

Plaintiff's next issue presented for review is as follows:

VIII. The court erred [in] not granting a new trial after defense counsel: (a) asked plaintiff about an unrelated lawsuit between plaintiff and the State of Tennessee over three guards shooting him in prison while holding a white flag. (b) intentionally misquoting Dr. Hutt (an expert witness).

Here again, plaintiff has failed to point out any place in the record where this alleged error occurred, and we have difficulty determining that there was any type of error from the short statement made in plaintiff's brief. This issue is without merit.

The next issue presented for review, as stated in plaintiff's brief, is:

IX. The court erred by not allowing adequate time for closing arguments after a three (3) week trial and by urging plaintiffs' counsel from the outset to rush through the trial.

The trial court advised counsel that they would be allowed thirty minutes each for closing argument. Plaintiff's counsel sought forty-five minutes and apparently was allowed a little additional time over the thirty minutes. We do not disagree with plaintiff's statement that a reasonable time should be allowed to counsel for closing argument. We have reviewed this record and, recognizing the wide discretion of the trial court in the conduct of the trial, we cannot find any abuse of discretion in limiting closing arguments. This was an automobile accident case, and the parties were given an opportunity to fully and fairly present the evidence. There is nothing in the record to indicate that the trial court actually cut counsel off in his argument; if anything, he was allowed some leeway. We find no abuse of discretion on the part of the trial court. This issue is without merit.

Plaintiff's final issue, as stated in his brief, is:

X. The court erred by not granting a new trial because of the inconsistent findings of the jury on the special verdict form and the admission by both parties and the court that the jury was confused.

Nationwide amended its pleadings prior to trial to reflect the defense of comparative negligence subsequent to the ruling of the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992). The interrogatories propounded to the jury were an effort to conform to the *McIntyre* decision.

It appears from the record that the jury first returned its special verdict form and answered that the defendant was negligent, but that his negligence was not the proxi-

mate cause of injury or damage to the plaintiff. Upon urging from the plaintiff, the jury was asked to continue deliberations to answer the third and fourth questions on the special verdict form; that is: 3) Was the plaintiff negligent, and 4) Did the plaintiff's own negligence account for fifty percent or more of the total negligence that proximately caused his/her injuries or damages. Upon further deliberation, the jury answered both of these questions in the affirmative. Plaintiff apparently argues that the jury's answers to the four questions were inconsistent, but we do not find that to be the case. The jury merely found that the defendant did not proximately cause plaintiff's injuries and damages, and also found that plaintiff was responsible for more than fifty percent of the negligence that resulted in his problems. There does not appear to be any inconsistency. We find this issue to be without merit.

In conclusion, the judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

HIGHERS and FARMER, JJ., concur.