IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 21, 2021 Session

## KARLA CHASE v. OBER GATLINBURG, INC.

**Appeal from the Circuit Court for Sevier County**
**No. 2012-0063-III     Rex Henry Ogle, Judge**

_____

### No. E2020-00649-COA-R3-CV
_____

This action arises from a snowboarding accident at Defendant Ober Gatlinburg's ski resort. Plaintiff Karla Chase, attempting to avoid a collision with another skier, crashed face-first into a 4x4 post supporting a warning fence marking the edge of the slope's navigable terrain.   She alleged that Defendant negligently created an unreasonably dangerous condition by not using rounded and/or padded fence posts.  The jury returned a verdict finding Defendant not at fault.  After returning the verdict form, one of the jurors requested and was allowed to read a statement saying, "we find the defendant not guilty.  We, the jury, are in one accord that Ober and the ski industry should look into using materials for posts with rounded corners or more padding."  Plaintiff filed a motion for new trial, but died before the hearing and the trial court's ruling denying the motion.  Plaintiff's counsel filed a notice of appeal in the deceased Plaintiff's name.  We hold that Plaintiff's personal representative may be substituted for her on appeal pursuant to Tenn. R. App. P. 19(a) even though no motion for substitution was made, because Defendant did not request the trial court to dismiss the action pursuant to Tenn. R. Civ. P. 25.01.  We affirm the trial court's judgment approving the jury verdict in favor of Defendant.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

KRISTI M. DAVIS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Richard Everett Collins, II, Knoxville, Tennessee, for the appellant, Karla Chase.

Janet Strevel Hayes and Mark A. Castleberry, Knoxville, Tennessee, for the appellee, Ober Gatlinburg, Inc., d/b/a Ober Gatlinburg Ski Resort.

**OPINION**

## I. BACKGROUND

The accident occurred on February 4, 2011. Plaintiff alleged that she was cut off by another skier and that in order to avoid a collision, she allowed herself to fall down short of the other skier. She lost control, slid, and struck one of the posts in a fence marking the edge of the ski slope. The only post that had protective padding was the leading one that was located furthest uphill. Plaintiff ran into one of the lower posts, a square 4x4 that had no padding. She suffered extensive and permanent facial injuries.

Plaintiff filed this negligence action on January 27, 2012. Following lengthy discovery and pretrial litigation, the case was tried before a jury on June 5-7, 2019. Defendant presented the testimony of Mark Petrozzi, an expert on ski area operations, safety, and risk management. Mr. Petrozzi testified that Defendant's fencing practices were consistent with, or exceeded, the general practices in the ski resort industry. He provided photographs of ski slope areas at three other resorts that depicted similar fencing to that used by Defendant. Plaintiff objected, arguing that Defendant had not given her timely notice that Defendant was going to use the photographs as exhibits. The trial court overruled the objection and admitted the photographs.

Before trial, the court ruled that evidence of benzodiazepines and OxyContin in Plaintiff's system at the time of the accident was admissible but that her prior history of intravenous drug use was not. Midway through trial, an emergency room nursing record that contained the phrase "IV drug user, clean since November" was accidentally published to the jury as an exhibit as part of Plaintiff's medical records. Plaintiff's counsel quickly realized the error and pointed it out to the trial court. The unredacted record was removed from evidence, and it was not in the materials sent to the jury room for consideration during deliberation.

During its deliberation, the jury sent the trial court a note asking if it "can make a comment at the reading of the verdict." The trial court read the proposed written comment to counsel for both sides as stating, "we, the jury, feel Ober and/or the ski industry needs to look into this issue of the use of four by fours or padding or rounded posts." No one objected, and the trial court stated that it would allow the comment to be read aloud.

On the verdict form, in answer to the first question, "do you find the defendant to be at fault?" the jury answered, "no." The trial court stated, "that will be the verdict of the jury." A juror asked and was allowed to read the written statement, stating:

We find the defendant not guilty. We, the jury, are in one accord that Ober and the ski industry should look into using materials for posts with rounded corners or more padding.

The court approved the verdict as thirteenth juror. Plaintiff filed a motion for new trial on August 30, 2019. Plaintiff died on November 9, 2019, and Defendant filed a suggestion of death on November 25, 2019. The trial court denied Plaintiff's motion for new trial on February 18, 2020. No one filed a motion for substitution as provided by Tenn. R. Civ. P. 25.01. The notice of appeal was filed in Plaintiff's name.

## II. ISSUES PRESENTED

After deceased Plaintiff's counsel filed a notice of appeal, Defendant moved to dismiss the appeal, arguing that the action was abated and extinguished on February 25, 2020 (90 days after the filing of suggestion of death), by operation of Tenn. R. Civ. P. 25.01. This Court entered an order directing the parties to address the following issue as the first issue in their briefs:

> 1. Whether this appeal should be dismissed for failure to timely substitute a party in place of deceased plaintiff, Karla Chase, pursuant to Tenn. R. Civ. P. 25.01, or whether this Court may order substitution pursuant to Tenn. R. App. P. 19(a).

Plaintiff raises the following additional issues, which we have restated slightly:

> 2. Whether the trial court erred in not granting a new trial on the ground that the jury engaged in misconduct by nullifying its own finding of negligence to absolve the Defendant of liability.

> 3. Whether the trial court erred in admitting into evidence expert testimony about photographs of other ski resorts over Plaintiff's objection that it was not timely or seasonably produced by Defendant before trial.

> 4. Whether a new trial is warranted, where the jury was inadvertently permitted to consider evidence that the trial court had excluded under Tennessee Rule of Evidence 404(b).

## III. STANDARD OF REVIEW

We review a jury verdict under the material evidence standard, which requires us to "review the record and 'take the strongest legitimate view of all the evidence in favor of

the verdict, assume the truth of all evidence that supports the verdict, allow all reasonable inferences to sustain the verdict, and discard all countervailing evidence.'" *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 298 (Tenn. 2017) (quoting *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 501 (Tenn. 2012)). The material evidence standard "lies at the foundation of the right to trial by jury," and "[a]s a result, we are required to affirm a jury verdict 'if there is material evidence to support [it].'" *Almuawi v. Gregory*, No. M2020-01018-COA-R3-CV, 2021 WL 2226624, at *1 (Tenn. Ct. App. June 2, 2021) (quoting *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013)).

"A trial court's decision regarding whether to grant or deny a motion for a new trial is discretionary in nature, and we accord such rulings great deference. We will only disturb such a decision if it amounts to an abuse of discretion." *Buckley v. Elephant Sanctuary in Tenn., Inc.*, No. M2020-00804-COA-R10-CV, 2021 WL 2450456, at *4 (Tenn. Ct. App. June 16, 2021) (quoting *Ali v. Fisher*, 145 S.W.3d 557, 564 (Tenn. 2004)). We review the trial court's determinations on issues of law de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## IV. ANALYSIS

### A. Substitution of Party for Deceased Plaintiff

As noted, Defendant argues that this appeal should be dismissed for Plaintiff's failure to file a motion for substitution after her death in accordance with Tenn. R. Civ. P. 25.01(1), which states in pertinent part,

> (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party[.] . . . Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Plaintiff relies on Tenn. R. App. P. 19, which provides as follows in pertinent part:

> **(a) Death of a Party**. If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in the appellate court and the claim sought to be enforced is not thereby extinguished, the appellate court may order substitution of the proper parties. A motion for substitution may be made by any party or by the successor or representative of the deceased party. . . . *If*

4

*a party entitled to appeal shall die before filing notice of appeal, notice of appeal shall be filed and served* by the deceased party's personal representative or, if there is no such personal representative, *by the deceased party's counsel of record* within the time prescribed in these rules. *After notice of appeal is filed and served, substitution shall be effected in the appellate court in accordance with this subdivision.*

**(d) Effect of Failing to Order Substitution**. An order of substitution may be entered at any time, but the omission to enter such order shall not affect the substitution.

(Bold font in original; italics added for emphasis). The advisory commission's comments to Rule 19 state as follows in pertinent part:

Subdivisions (a) through (d) provide that no appeal shall be dismissed because of the death or removal from office of any party, as long as the claim sought to be enforced is not extinguished by reason of death. The procedure for substitution described in this rule is similar to the rule on substitution of parties in civil actions specified in rule 25 of the Tennessee Rules of Civil Procedure.

Subdivision (a) is in accord with Federal Rule of Appellate Procedure 43. It authorizes an attorney of record for the deceased to take an appeal on behalf of successors in interest if the deceased has no personal representative. . . .

In accordance with the general spirit of these rules, the omission of an order of substitution is not fatal to an appeal, but may be entered at any time under subdivision (d).

Defendant relies upon *Williams v. Williams*, No. E2012-00162-COA-R3-CV, 2012 WL 3986328 (Tenn. Ct. App. Sept. 12, 2012) and *Dobbins v. Green*, No. W2012-00460-COA-R3-CV, 2013 WL 1149574 (Tenn. Ct. App. Mar. 20, 2013). However, both of these cases concern substitution under Rule 25.01, not Tenn. R. App. P. 19. We find that Rule 19 is applicable to the present case. In *Williams*, the plaintiff's attorney moved for voluntary dismissal in the trial court after plaintiff died, before the 90-day period ran. 2012 WL 3986328, at *1. After the 90-day period expired, the defendant moved for summary judgment based on the fact that plaintiff had not complied with Rule 25.01 by filing a substitution of proper party. *Id.* The *Williams* Court held that the filing of suggestion of death triggered the running of the 90 days, and held that the plaintiff's action should have been dismissed pursuant to Rule 25.01. *Id.* at *3.

The issue in *Dobbins* was whether, "in the absence of excusable neglect, failure to comply with Rule 25.01 requires mandatory dismissal of the case with prejudice and the lawsuit may not thereafter be revived by the filing of a motion for voluntary dismissal." 2013 WL 1149574, at *1. *Dobbins* also observed that Rule 25.01 contains "unambiguous" and "mandatory" language, and stated that "[t]he *Williams* case also stands for the proposition that, once Tennessee Rule of Civil Procedure 25.01 operates to dismiss the claim, the claim cannot be revived by other means, *i.e.*, under other rules of procedure." *Id.* at *4. The *Dobbins* Court further stated that

> [t]he *Williams* case is in keeping with the purpose of Rule 25.01, which is revivor of an action that has abated. At common law, the death of a party resulted in abatement of all lawsuits involving that party until such time as the suit was properly revived. *See, e.g., Rogers v. Breen*, 56 Tenn. 679, 1872 WL 3905 (Tenn. 1872) (stating that "the death of the sole plaintiff in the suit was an abatement or suspension of all authority to proceed further until revivor of the suit."). "Abatement, in the sense of common law, is an entire overthrow or destruction of the suit, so that it is quashed and ended. At common law, a suit, when abated, is absolutely dead." *Carver v. State*, 398 S.W.2d 719 (Tenn. 1966). Consequently, unless revived, upon the death of the plaintiff, a lawsuit abates. Furthermore, the prerequisite to revive an action is to file a motion for substitution of party within the time mandated by Tennessee Rule of Civil Procedure 25.01. *Mid-South Pavers, Inc. v. Arnco Construction, Inc.,* 771 S.W.2d 420, 423 (Tenn. Ct. App. Jan. 12, 1989) ("Revivor of an action therefore requires first, entering an order of substitution of parties."). Accordingly, if a lawsuit is not revived by proper compliance with Rule 25.01, it is abated under the mandatory language of the rule, i.e., "**shall** be dismissed."

*Id.* (emphasis in original).

*Williams* and *Dobbins* make it clear that noncompliance with Rule 25.01 places an action at considerable peril at the trial court level. However, the present action is different from those two cases in one important regard: here, Defendant never moved the trial court to dismiss Plaintiff's action for failure to comply with Rule 25.01's 90-day deadline. In *Williams*, the trial court heard and considered the defendant's summary judgment motion. 2012 WL 3986328, at *2. In *Dobbins*, the trial court considered the defendant's motion to dismiss and the plaintiff's response that she should be granted more time to move for substitution under Tenn. R. Civ. P. 6.02 for excusable neglect. 2013 WL 1149574, at *2. We stated in *Dobbins*:

6

In *Scott v. Roberson*, No. M2011-00016-COA-R3-CV, 2011 WL 3760940 (Tenn. Ct. App. Aug. 24, 2011), this Court held that "[d]espite the mandatory language set forth in Rule 25.01(1), Tenn. R. Civ. P. 6.02 provides that the time within which an act must be performed may be enlarged upon showing of excusable neglect. . . ." However, because the trial court determined that Plaintiff's failure to move for substitution of party was not based upon excusable neglect, which finding is not disputed on appeal, the enlargement of time allowed under Rule 6.02 is not applicable in this case.

\*　　　\*　　　\*

The *Williams* holding is clear—Tennessee Rule of Civil Procedure 25.01 embodies a[n] unambiguous procedural mechanism for the dismissal of civil actions *when the trial court determines that, in the absence of excusable neglect, a party has failed to file a timely motion for substitution of party* following the filing of a suggestion of death.

2013 WL 1149574, at \*4 (emphasis added; footnote omitted). In the present case, the trial court never made such a ruling because it was not asked to. As Plaintiff's counsel asserts, she was not provided an opportunity to argue to the trial court that her time should have been enlarged because of excusable neglect.

Generally speaking, a legal action is not dismissed until a court enters a written order dismissing it. *Cf., e.g., Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) ("It is well-settled that a trial court speaks through its written orders . . . and that the appellate court reviews the trial court's written orders"). Plaintiff's action was not dismissed by operation of Rule 25.01 at the time Plaintiff's counsel filed a notice of appeal, which is allowed by Tenn. R. App. P. 19(a). Rule 19 provides that "[a]fter notice of appeal is filed and served, substitution shall be effected in the appellate court in accordance with this subsection." The advisory commission comment clarifies that "the omission of an order of substitution is not fatal to an appeal, but may be entered at any time." The Supreme Court has stated that "[i]t is well settled that Tennessee law strongly favors the resolution of all disputes on their merits." *Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996). Under these somewhat unusual circumstances, we will allow substitution of Plaintiff and proceed to consider the merits of the appeal.

### B. Jury's Post-Verdict Comment

The first question on the jury verdict form was, "Do you find the defendant to be at fault?" The trial court read the verdict of "no" and the following colloquy took place:

7

THE COURT: Okay. Now let me read the verdict to the jury. As follows, do you find the defendant to be at fault? The plaintiff has the burden of proof. The answer is no. So that will be the verdict of the jury. The complaint against Ober Gatlinburg is dismissed.

\*     \*     \*

JUROR: Am I allowed to make—is the jury allowed to make the statement that I gave you?

THE COURT: Yes, sir. You sure are, yes, sir, please.

JUROR: Can I have it back, please?

THE COURT: You sure can. Yes. Will you hand that back to him, please? Yes, sir.

JUROR: We find the defendant not guilty. We, the jury, are in one accord that Ober and the ski industry should look into using materials for posts with rounded corners or more padding.

THE COURT: Yes, sir. Well, we thank you very much, and you all have a good evening[.]

Plaintiff argues that the jury engaged in misconduct by attempting to attack and nullify its own verdict with this statement. Plaintiff repeatedly asserts that the statement should be construed as a finding of negligence by Defendant, despite the fact that the jury's verdict finding Defendant not at fault and "not guilty" expressly states the opposite. There is no dispute that the trial court properly instructed the jury; Plaintiff states so in her brief and never objected to the jury instructions. Plaintiff argues that "the jury's attempt to nullify the law of negligence must be rejected," but the authorities cited by Plaintiff in support of this contention expressly recognize that jury nullification is a concept unique to criminal law and "certainly has no place in a civil trial where neither party has a right to a general verdict and where there is no double jeopardy bar." (quoting *Ballard v. Uribe*, 715 P.2d 624, 647-78 (Cal. 1986) (Bird, C.J., concurring and dissenting)). The trial court did not err in determining that the jury's post-verdict suggestion was not "jury misconduct" warranting a new trial.

In the body of her brief, despite not raising it in the statement of the issues presented, Plaintiff argues in passing that the verdict is "contrary to the weight of the evidence," and that the trial court failed to fulfill its role as thirteenth juror. "It matters not a whit where

8

the weight or preponderance of the evidence lies under a material evidence review." *Almuawi*, 2021 WL 2226624, at *1 (quoting *Meals*, 417 S.W.2d at 422). Moreover, "[w]hether evidence is material has nothing to do with its weight." *Justice v. Hyatt*, No. M2019-02105-COA-R3-CV, 2021 WL 2693453, at *2 (Tenn. Ct. App. June 30, 2021). The record in this case reveals that there is material evidence supporting the jury verdict.

This Court has recently reiterated the trial court's duty as thirteenth juror, and our appellate review, as follows:

> "In Tennessee, the law is clear that if a motion for a new trial is filed, then the trial court is under a duty to independently weigh the evidence and determine whether the evidence 'preponderates' in favor of or against the verdict." *Blackburn*, 2008 WL 2278497, at *6 (footnote omitted) (citing *Woods v. Walldorf & Co., Inc.*, 26 S.W.3d 868, 873 (Tenn. Ct. App. 1999); *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996); *Witter v. Nesbit*, 878 S.W.2d 116, 121 (Tenn. Ct. App. 1993)). This role is referred to as the "thirteenth juror." *Id.* (citing *Holden v. Rannick*, 682 S.W.2d 903, 904-05 (Tenn. 1984)).
>
> When exercising this role,
>
>> The discretion permitted a trial judge in granting or denying a new trial is so wide that our courts have held that he or she does not have to give a reason for his ruling. If the trial judge does give reasons, the appellate court will only look to them for the purpose of determining whether the trial court passed upon the issue and was satisfied or dissatisfied with the verdict. If the trial judge does not give a reason for her action, the appellate courts will presume she did weigh the evidence and exercised her function as thirteenth juror.
>
> *Id.* at *7 (internal citations omitted) (citing *Wakefield v. Baxter*, 41 Tenn. App. 592, 597, 297 S.W.2d 97, 99 (Tenn. Ct. App. 1956) ("If he does give reasons for his action, this court looks to them only for the purpose of determining whether he passed upon the issues, and was satisfied or dissatisfied with the verdict thereon.")); *see also Mize v. Skeen*, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971)[.]

*Buckley*, 2021 WL 2450456, at *5 (footnote omitted). If "the trial judge makes comments that indicate that he [or she] has misconceived his [or her] duty or clearly has not followed it, this court must reverse and remand the case for a new trial." *Shivers*, 937 S.W.2d at

947. In the present case, the trial court stated that "the evidence was more than sufficient for the jury to find as they found, that the defense─the defendants were not liable for the injuries to the plaintiff." We have reviewed the trial court's comments as thirteenth juror and find no indication that it misconceived or did not follow its duty.

### C. Photographic Evidence of Other Ski Resorts

Defense expert Petrozzi testified that he had located and provided "about a dozen examples" of other ski resorts that used fencing similar to Defendant's, and he proffered photographs of three such resorts as examples. During trial, Plaintiff objected to the photographs as follows:

> [PLAINTIFF'S COUNSEL]: They said they gave us [the photographs] maybe six or seven days ago. These are─these should have been supplements to an expert report. I've never had an opportunity to cross-examine or do, do any, send questions─
>
> THE COURT: Let's see them.
>
> [DEFENSE COUNSEL]: If I may, Your Honor, we produced these potential exhibits pursuant to the rule. All these are is illustrations of a previously expressed opinion that we're consistent, Ober is consistent with other ski area resorts and those are─
>
> THE COURT: I'm going to let him use them.

On January 4, 2016, more than three years before trial, Defendant provided Plaintiff a copy of Petrozzi's 33-page report as a discovery response. The report included the following opinions:

> Clearly, there is no statutory or code obligation of a ski area operator in the state of Tennessee to mark or pad any object that is *off* the "slopes or trials" at a ski area. Furthermore, there are no standards promulgated within the ski industry to mark or pad any object(s) located off the slopes and trails of a ski area. It is also consistent with the ski industry's generally accepted practices to *not* mark or pad objects that are off-trail, which the subject 4 x 4 post certainly was. . . . [Defendant's] practice of padding just the uphill post is consistent with the generally accepted and applied practices of the ski industry for those that may pad some off-trail posts.

It should be noted that it is this writer's direct knowledge that a number of the resorts that [Plaintiff] identifies as ski areas she has skied, prior to her injury (see list on page 7), use 4 x 4 posts in similar applications as Ober Gatlinburg.

(Emphasis in original).  As Defendant notes, Plaintiff elected not to depose Petrozzi.

On May 15, 2019, three weeks before trial, Defendant filed its exhibit list, which expressly included "photographs of other comparable ski areas relied on by Mark Petrozzi."  Six days before trial, Defendant emailed Plaintiff copies of the photographs.  It is well settled that "[g]enerally, the admissibility of evidence is within the sound discretion of the trial court [and] the trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion."  *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004).  Given that the photographs at issue simply buttress Petrozzi's opinion, given three years before trial, we cannot say that the trial court abused its discretion in allowing the photographs into evidence.

### D. Inadvertent Publication of Excluded Evidence

Plaintiff argues that the accidental brief publication of Plaintiff's unredacted medical record containing the handwritten notation, "IV drug user, clean since November" resulted in reversible error.  The entire discussion regarding this mistake took place mid-trial, while the jury was out, as follows:

[PLAINTIFF'S COUNSEL]: Well, I, I, I, noticed−I don't know if this was a sleight of hand or what happened, but yesterday Exhibits 30 and 31 were introduced after Becky's testimony.

THE COURT:  Yes.

[PLAINTIFF'S COUNSEL]:  And it was supposed to be the urinalysis from UT Medical Group and, and the urinalysis from LeConte but what, what actually was entered as an exhibit, and I didn't realize this, are records from LeConte where they've highlighted IV drug abuse, the very thing that earlier in−you had, you had excluded.  Polysubstance abuse, I think that's improper, and I don't know what to do with it now that it's been published to the jury . . .  Well, that should be removed, Your Honor.

*       *       *

THE COURT: Well, who put it in?

11

[DEFENSE COUNSEL]: We put it in, Your Honor.

[PLAINTIFF'S COUNSEL]: Considering those portions−

[DEFENSE COUNSEL]: I didn't−

[PLAINTIFF'S COUNSEL]:−were highlighted−

[DEFENSE COUNSEL]: I took it out of the UT. I didn't realize it was in the LeConte. I−

THE COURT: Take it out.

[DEFENSE COUNSEL]: I apologize, Your Honor.

[PLAINTIFF'S COUNSEL]:  You know, certainly by the Court's statement, I, I certainly wouldn't think that was anything sleight of hand, chicanery, or trickery−

THE COURT: Look, it happens.

[PLAINTIFF'S COUNSEL]: Yes.

THE COURT: It is what it is.

The accidentally-published record was removed, and as already noted, was not in the materials taken to the jury room and available to the jury during its deliberation.  Plaintiff did not formally object, move for a mistrial, or ask for a curative jury instruction.   In denying a new trial, the trial court stated, "any issues relating to the IV drug use that went back to the jury, based on the totality and the overwhelming evidence in this case, was a minor problem.  And so the Court finds that to be harmless[.]"

In *In re Estate of Smallman*, 398 S.W.3d 134, 152-53 (Tenn. 2013), the Supreme Court set forth the analysis an appellate court should conduct in addressing an issue of whether an error was harmless:

> In conducting a harmless error analysis in a jury case, it is incumbent upon the reviewing court to carefully examine the whole record in determining whether admission of the evidence more probably than not influenced the jury's verdict.   The reviewing court should consider the substance of the

wrongly admitted evidence and its relation to other evidence in the case in the context of the case's peculiar facts and circumstances. *Blankenship v. State*, 219 Tenn. 355, 410 S.W.2d 159, 161 (1966). While it should not be presumed that the jury members were influenced by passion and prejudice as a result of the inadmissible evidence, "it is presumed that the jury considered whatever evidence was laid before them." *Hager v. Hager*, 17 Tenn. App. 143, 66 S.W.2d 250, 257 (1933). In assessing the amount of weight a juror probably would have placed on the erroneously admitted evidence, the reviewing court should take into account whether the facts present a close case or whether the point at issue is not clearly established by the proof. *Id.* A finding of either supports the conclusion that introduction of the evidence was harmful error. *Id.* The court should also bear in mind that the mere fact that there is sufficient evidence in the record to support the jury's verdict does not necessarily render the admission of wrongfully admitted evidence harmless as it cannot be known what weight the jury assigned to the inadmissible evidence in reaching its verdict. *Blankenship*, 410 S.W.2d at 161. If the reviewing court determines, however, that the fact the inadmissible evidence was submitted to establish is clearly established by other evidence in the case that is competent and properly admitted, the court ordinarily should hold the error harmless. *Love v. Smith*, 566 S.W.2d 876, 879 (Tenn. 1978).

(Footnote omitted). As particularly pertinent to the situation of the present case, the *Smallman* Court continued:

Further, the reviewing court should examine *the degree to which the wrongly admitted evidence was emphasized by its proponent during trial* as an indicator of its likely prominence in the minds of the jurors, noting in this regard whether the evidence was mentioned by counsel in opening statement or closing argument. *Cf. State v. Young*, 196 S.W.3d 85, 107 (Tenn. 2006). The reviewing court should not focus on whether other evidence supported the jury's verdict and whether the jury reached a correct result. Rather, implementing the considerations we have here described and any other appropriate considerations indicated by the specific facts of a case, the court should determine whether the improperly admitted evidence more probably than not prejudiced the jury in its verdict and thereby unfairly tainted the decision-making process.

*Id.* at 153 (emphasis added). In the present case, the unredacted record containing the single offending line "IV drug user, clean since November" was before the jury only a brief time before the error was discovered and rectified. Further, no attention whatsoever was

13

drawn to it by counsel, for it was not mentioned in the jury's presence a single time. Applying the analytical factors espoused in *Smallman*, we hold that the trial court did not err in finding the error harmless.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are assessed to the estate of Appellant, Karla Chase, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

14